Our second case is United States v. Suncar 23-4765, Ms. Thoma, whenever you're ready. Good morning, Chief Judge, your Honors, and may it please the Court. Jennie Thoma for Rashun Suncar. Of the three issues in this appeal, I'd like to begin with offers to sell. The argument that Pennsylvania delivery is overbroad because it includes offers to sell. Here we have two key situations or circumstances. We have a thoroughly reasoned authored opinion from the state's intermediate appellate courts stating that Pennsylvania subsection 830 includes offers to sell. We also have no persuasive data that the Pennsylvania Supreme Court would decide it differently if it agreed to take it up, which it has yet to do. Under the law in the circuit, these circumstances support only a finding that it is overbroad and does include offers to sell under Walker. It is an unpublished decision, but nonetheless, it's still the highest state court authority, and this court, as we mentioned in our recent 28-J letter, does regularly rely on the highest available when it's an intermediate appellate court decision, which is here. We don't usually give so much credence to our own unpublished opinions. Why would we do any better for a state intermediate appellate court's unpublished opinion? One reason is because it is the highest available authority. Another reason is because the court didn't have to reach the issue at all. It was initially an Anders brief, and they could have very easily just simply not taken it up, but they ordered further briefing, and they very carefully and thoughtfully considered the Third Circuit's opinion in glass, and they concluded in a very, again, extensive reasoned opinion that they disagreed with the Third Circuit's interpretation of Pennsylvania law. And so, you know, even if you disagree with me about that, I would say that the absolute most you could say is that the law in Pennsylvania is uncertain, because there are certainly, it is unpublished, but that doesn't mean that there are Commonwealth's attorneys who aren't, who would say, you know, Judge, I don't think you should enhance this sentence because this is an unpublished opinion. I feel sure that's not happening. And if any court could rely on it, which they do have the option to do despite being unpublished, I think that that is, that is not enough for this court. As this court, a different panel of this court said in Hope recently a few years ago, in order to apply a federal sentence enhancement, this court should have clear signals. That's the quote. Clear signals, and you should be, you should be convinced to a certainty that the state law isn't overbroad, or is not overbroad before you apply a federal sentence enhancement. Does it matter, excuse me, does it matter that the principal issue in Walker was whether or not the Pennsylvania statute was a match for a separate New York State statute, and the sort of the secondary analysis was victim and not really part of the holding of the case, on top of the fact that it's unpublished? I don't think it matters that they were analyzing whether it was substantially identical to a New York offense, because the New York offense also includes offers to sell, and so I think that's a distinction without much practical difference for our purposes here in federal court, personally. I mean, I know that it is a different, it is a different question, but whether or not it includes offers to sell, and you know, like the New York offense, is really relevant to what we're deciding, we're taking up here today. What about the fact that the Third Circuit, even after Glass, and with the benefit of Walker, has continued to suggest that Walker is simply wrong? There are two, as we again said in the 28-day response, the first case that the government raised, Hurt, just doesn't apply here, it considered different issues that aren't what we're raising. The other two, Brown and Megibet, did little more than simply just observe that they were bound by Glass, that Glass was binding on subsequent Third Circuit panels, which they were, and that, you know, they didn't do much more than simply that, to say that we are bound by Glass, and that we are bound to follow it. Even if they disagreed, that was still, at the end of the day, something that they had to do. This court, of course, labors under no such handicap, there is no precedent that binds you, and so you're free to consider Walker on its own merits, whatever those might be, but again, we do feel that even at worst for us, at worst, there's just, Pennsylvania law is unclear, and courts could be enhancing sentences on that basis of Walker, even though it's unpublished, and we don't think that that's sufficient to apply a federal sentencing enhancement. Now, ultimately, state courts are the final arbiters of state law, and I do, I do think that that's correct, I do think that there should be some definition. In almost every setting, including the criminal setting, we've said that our responsibility is to anticipate what the highest court of that state would do. So, even if it was a published appellate court decision, we've said repeatedly, we're not bound by that. It may be bound if the highest court in that state has ruled, but otherwise, our responsibility is to anticipate what the highest court of that jurisdiction would say. And so, can you help me a little bit understand why you think Walker is right? I mean, I'm sort of baffled by Walker's reasoning, to be totally fair. And so, can you, I understand you want to say we should just follow it blindly into the night, right? But assume for a minute, I don't think we should do that, we should actually just consider it like it was a law review article or a brief, and sort of, if it's persuasive, great. If it's not, then it's no more interesting than a newspaper article. So, why would I think it's right, particularly given the distinction the statute makes between delivery and offers for sale in the same statutory provision? That's right. The first thing I would say is that there has to be, under the law of this circuit at least, there has to be some persuasive data that the Supreme Court would decide it differently. And I think the government has not offered any of that here. No, we have to have confidence in what the highest court of the land would say if asked this question.  Right? We don't have to, the whole point of this inquiry is we don't have to have a decision from the highest court in the land. But the government does have to offer this court, or it has to have some persuasive data that the Supreme Court of Pennsylvania would decide it differently. That is what it's followed in the past. And they've offered the statute, and they say, read the statute, it's pretty darn clear. And that seems like a reasonable argument to make. And so, that's what I'm asking is, why is that not, like, help me understand why you think Walker is correct, rather than why you think we should just follow it blindly. Walker had two rationales, and one of them was that it disagreed with the Third Circuit's idea that, the Third Circuit in glass basically said, there's a subsection A-1, that is, drugs that have been adulterated or misbranded, it expressly includes offers to sell in the text. A-30, therefore, the Third Circuit reasoned, doesn't have offers to sell, that must have been evidence or, you know, good enough for us that the Pennsylvania court didn't include regular deliveries to include offers to sell. And that's what they disagree with. They say, for two reasons, they say, first of all, we don't think that the omission, we're interpreting the omission differently. Right? We don't think that that's evidence that they didn't include, they didn't intend for it to be in A-30. And we do think that they've left that possibility wide open. And so, that's what we are interpreting. I understand that argument. Let me maybe ask it a different way. Do you think Walker's right for any reason that is not included within Walker itself? So, in other words, do you think Walker reached the right result for some other reason, other than what Walker's, I understand what Walker said. I totally get that. And I wasn't clear in my question. Do you think there are reasons that are not included in Walker that suggest that it is right? Or am I just looking to the reasons as they are that Walker provided? I think the most compelling reason for me is that even if we might disagree, that state courts get to decide what their own law means. And my best reason is perhaps a practical one or a logical one, which is that if you rule in the government's favor, we will have a Pennsylvania predicate that is simultaneous. It will be Schrodinger's predicate. Simultaneously broad enough to include offers to sell when Pennsylvania would like to hammer their defendants. And simultaneously narrow enough to not include offers to sell when the government would like to hammer our clients. And that just cannot be, as a matter of practical, that cannot be. So, I think there are several reasons. But that's not a reason while, you understand, that's not a reason why Walker is correct. That's a reason to follow Walker blindly into the night. And that may be a good reason. I'm just trying to bracket that reason that we just blindly follow it because it is, as opposed to we should follow it because it's correct in some meaningful way. And maybe we just follow it blindly. I totally understand that argument. I just wanted to make sure I understood all the arguments you have for why you think the decision is legally defensible and correct. I think that either, I think that reasonable minds could arrive at either conclusion. But that the state court has arrived at this one. And so, but I would disagree that you're so limited. I mean, of course, it's unusual. But this court always has the ability to certify if it wishes. So, but why would we think that the Supreme Court of Pennsylvania would arrive at the conclusion that you proffer here? I don't, I think that it's probably a 50-50. I don't know what the Supreme Court of Pennsylvania would do. And I don't think any of us know what they would do. I frankly am surprised that Walker decided to take up an issue that was in an Anders brief. I don't know why they reached so far and so thoroughly to begin with. It was clearly something that was important to the panel. But I do think that, I don't think any of us know for sure what the Pennsylvania Supreme Court would do. And I think it's that uncertainty that counsels against applying this enhancement for federal purposes. Well, it was somewhat important, I guess, because it was, I agree with you that it was important enough to take it up in an Anders brief, but not important, not so important that they would publish. Well, that's a fair point. I will concede that point. But I'll also, surprisingly, it's been three years since Walker was decided, and the Pennsylvania Supreme Court has yet to step in, which I also personally find puzzling. I would think it would be something that they might, but it hasn't done so yet. So, here we are. Well, they may think that we don't really need to fool with unpublished intermediate court opinions. That's possible. It's also possible they might agree with it. It's hard to say. Or that just nobody's prosecuting an offer to sell under that statute. The issue doesn't come up, right? We see it in this unusual context there, but we don't see it in the context of a Pennsylvania court actually prosecuting an offer to sell. Sure. The empirical data test, of course, though, has been discontinued. So, just in case that's what you were thinking, I wanted to be clear about that. We're trying to understand. You said the Supreme Court would have fixed this. My point is the most likely scenario is that these prosecutions are not being brought, right? That's why we have no case law suggesting that they could be brought. Right. I think it probably is certainly a vast minority of what comes up under that statute. But it also, in this instance, only arose for a sentencing enhancement, not even a prosecution. So, you're right. That may very well not come up every day. It probably doesn't. I'm happy to take any further questions on that if the court has them. Otherwise, I'll move on to the reasonableness of the sentence. So, I guess just to address them in a backward chronological order, in our other 28J recently, we pointed out that another panel of this court recently found the same judge, a different sentence that was similarly unexplained, an argument similarly unaddressed in a different case, in United States v. Prater, was unreasonable and remanded it. And the same circumstances are present here. Can you tell me where in your brief you make that argument? It's in our reply brief. So, help me understand why that matters to me at all. I totally understand this argument, right? And I confess I was a little surprised. But when I went back and looked, I don't see any suggestion of substantive unreasonableness that's made outside of the arguments that we've been talking about in the opening brief. That's right. It's a great question, Your Honor. I think that I would just point the court to Provence, in which this substantially identical thing happened. The government appealed a sentence that had an unexplained downward variance. And in Provence, the government not only appealed only the substantive reasonableness of the sentence, they expressly disclaimed at oral argument that the sentence was even procedurally reasonable. And this court held that it must. But the difference we have is, like, you haven't raised the substantive reasonableness argument, right? Like, you just raised the guideline calculation error. We did raise the substantive reasonableness in the reply brief, but not in the opening. Yes. I'm just trying to be clear. I understand in the reply brief, but you understand that doesn't, like, that doesn't do enough, I think, in most instances. I would disagree, because in Provence, it didn't matter that the government hadn't raised it in their brief. And the court found, Judge Motz said that we are obliged, the court cannot reach the substantive reasonableness of a sentence until it has satisfied itself that no procedural errors occurred. And of course, here, there were three. There's the one, of course, we raised in the opening brief, the procedural error and the guidelines error. And you think it goes both ways. So you raised a procedural error, and therefore, you think we are required to do a substantive review? I mean, that seems odd. You raised a specific objection in the opening brief. And then I understand in the reply brief, you come back and say, yeah, but you ought to consider this other error, too, that's not raised in our opening brief. But that seems like the other direction from what Provence was doing, right? Actually, the government raised substantive reasonableness in its brief, and so therefore, it was really responding to that. And it's like, well, if you're going to get into the substantive reasonableness of the sentence, then you must first satisfy yourself that no procedural errors occurred. And I think Provence is squarely on point to that. I think that's very direct. Maybe I'm not following. It would be on point if you had raised a substantive reasonableness claim in your opening brief, right? I don't think that, no, in Provence, it was also not raised originally. I think that that's what we have in common, is that Provence, there was no raising of the procedural issue originally. And the government did bring up substantive reasonableness, which is something that we didn't initially appeal. Well, if we disagree with you on your procedural reasonableness arguments, wouldn't that be the end of it? I mean, I guess it depends on if Your Honors disagree with me about Provence. I guess I'm not understanding that at all. If you've made procedural reasonableness arguments, we don't find they're meritorious, but you haven't made a substantive reasonableness argument, how would we ever get to that? That's right. No, I'm sorry. You're correct. We would agree with that. All right. But if I understand your point, is that if you win on the first issue, the government is saying, well, even if you win on the first issue, that error is harmless because the sentence is otherwise reasonable, and you're responding to that argument. Yes. So it's a bit of a different context. Perhaps there are some – I'm actually agreeing with you. Yeah. You're okay. I'm just saying that I think that the points that we have in common are relevant. That's all I'm saying. Okay. Thank you. All right. Finally, with the time left – You don't have any time left. Oh, okay. Sorry. I saw 105. I didn't realize it was in the wrong direction. But you have some time left on rebuttal. Ms. Nogay? Good morning, Your Honors. May it please the Court. The district court properly deemed Mr. Sunkar a career offender because his prior convictions under the Pennsylvania Drug Distribution Statute, A30, are controlled substance offenses under the plain text of Section 4B1.2 of the Guidelines. The Pennsylvania statute is not overbroad by conduct because it does not criminalize offers to sell or attempt offenses. And I'll begin with the offers to sell argument. Pennsylvania law simply does not criminalize offers to sell. A30 clearly makes it a felony to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance. The definition section further defines delivery as the actual, constructive, or attempted transfer of a controlled substance. The statute is notably silent as to offers to sell. Now, as we mentioned, at least one provision contained in Section 780.113 does expressly prohibit offers, and that's Section A1. And Section A1 criminalizes the manufacture, sale, or delivery, holding, offering for sale, or merely simple possession of any controlled substance that has been adultered or misbranded. So that is entirely separate from Section A30. And the offering to sell language, as I mentioned. Right, but the Walker Court seemed to think that that was relevant with respect to interpreting the statute that we have before us. So what about that? Yes, Your Honor, I would agree the Walker Court found that relevant. Similar to Judge Richardson, I am equally baffled by the Walker Court's reasoning. I don't think it makes any sense. I think the fact that that offering for sale language is absent from A30 shows that the Pennsylvania legislature did know how to criminalize offers to sell, and they simply chose not to criminalize offers to sell in Section A30. So if Walker had been a published opinion, would that change our discussion? It would, Your Honor. I think it would change the discussion entirely. However, Walker is not a published opinion. It's an unpublished, non-candidate. But why is that? I mean, it would still be an appellate court decision, right? Wouldn't we still have the obligation as a court to determine what we think the Supreme Court would do? Yes, Your Honor. I think even if Walker were a published opinion, the burden would then be on the government to produce some evidence that the Supreme Court would decide the decision differently. However, Walker is not a published opinion, and by the Superior Court's own rules it can only be cited for its persuasive value. It's not binding on the PA Superior Court. It's not binding on a single trial court within the entire Commonwealth, and it's certainly not binding on this court. And my colleague brought up the two cases that were decided by the Third Circuit this summer, Magabet and Brown. And, Your Honors, if Walker were an authoritative decision, if it were intervening, controlling law out of the state of Pennsylvania, the Third Circuit would have been required to follow the holding in Walker. But the Third Circuit was not required to follow that holding. They acknowledged the Walker decision, and they said, we're not persuaded by it. And while Magabet and Brown were both subject to plain error review, I believe it was the Brown court that said that argument would fail even under de novo review. So, Your Honor, the holding in Walker simply does not affect this court's analysis of whether Pennsylvania criminalizes an offer to sell. And, Your Honor, I agree with my colleague that the empirical data test doesn't apply, but Duane S. Alvarez's still remains good law, and Taylor limited it to a certain situation. The defendant has to prove that the statute, that the state, excuse me, applies the statute in a special, non-generic manner. Mr. Sunkar cannot do that. Again, the only suggestion Mr. Sunkar has that Pennsylvania criminalizes offering to sell is this Walker case, which is just unpersuasive. And, Your Honor, this case actually has addressed this exact issue before in United States v. Johnson. Johnson dealt with a Maryland statute. The defendant in that case had a conviction for possession with intent to distribute. That Maryland statute, the defendant argued that the Maryland statute criminalized an offer of distribution. And this court looked to the holdings of our sister circuits, and they found those opinions in those holdings quite instructive because our sister circuits who have looked at this issue, those state statutes expressly criminalized an offer for sale. For example, the Tenth Circuit, the Kansas statute expressly criminalized offer for sale. The Fifth Circuit looked at the Texas statute, which expressly defined deliver as offering to sell. In contrast, the offering to sell language was notably absent from the Maryland's criminal code, and this court rejected the defendant's argument that the statute criminalized a mere offer to sell drugs. And for the same reason, because the Pennsylvania statute is silent, this court should reject that argument here as well. Your Honors, if there are no additional questions as to the offering to sell issue, I will move on. Actually, I apologize. One other thing I wanted to point out, I do think it is significant that the Walker Court, they were comparing the Pennsylvania statute to a New York statute. And I think that that's significant for one reason. The Walker Court held that in sum they concluded that the New York offense is substantially identical to the delivery offense under Section 830 in Pennsylvania. But what's significant is that the New York statute, Section 220.00, only criminalizes bona fide offers to sell. It's well established under New York law that it must be a bona fide offer in that the defendant must have both the intent and the ability to proceed with the sale. The First Circuit in United States v. Bryant looked at that statute, 220.00, and they held that that statute does in fact qualify as a predicate offense under the career offender enhancement because it requires the possession and the intent to distribute or dispense. And the Third Circuit actually followed that holding of Bryant in United States v. Santana, finding that that same New York statute did in fact qualify as a predicate offense for a career offender enhancement. And here all Walker says is that the Pennsylvania statute is identical to that New York statute. Turning now to the attempted transfer argument, it appears from this court's holding in Groves that the determinative question is whether there exists a separate statute for attempt crimes that would be rendered superfluous by finding that the relevant drug statute encompasses attempt crimes. This court again reiterated that in two similar cases, Davis and Miller, holding in both the attempted transfer is a completed distribution. And Pennsylvania also codifies attempt separately. The government cited several Pennsylvania cases in their response brief that demonstrate attempted delivery is charged under the general attempt statute, Section 901, rather than by charging a violation of Section A30 and then invoking 102B's attempted transfer definition. For example, Commonwealth v. Bernard, that was one of the cases that was cited. That's from 2019. Again, that upheld a conviction for attempt to deliver a controlled substance that was charged under Pennsylvania's general attempt statute. I think I know your answers, but just to ask, in Campbell, there was a general attempt statute in West Virginia. I know it wasn't mentioned by the court, but it seems odd that that is the line that you draw out of Groves, Miller, and Davis when Campbell itself, you know, the state had such an attempt statute and the court, you know, didn't find that to be pertinent. Help me understand why that ought to be the line. Yeah, I agree, Your Honor. And as the court noted in Groves, that was brought up in the briefing and argument in Groves that West Virginia actually does have this separate attempt statute. And the court in Groves indicated that, number one, that wasn't an issue before the court, so they weren't going to take it up. They also indicated that that could actually speak to the proper construction and proper interpretation of the West Virginia statute. I would note that the parties in Campbell, they agreed that the least culpable conduct criminalized by the West Virginia statute was an attempted distribution. And this court didn't really do any further analysis into the least culpable conduct criminalized. The parties didn't really ask them to. Correct. The parties did not ask the court to. They mistakenly, and my office was involved in that. My office mistakenly agreed that the least culpable conduct criminalized was an attempted delivery. Here, the least culpable conduct criminalized by the Pennsylvania statute is not attempted delivery. Rather, it's a completed delivery that can be completed by the means of an attempted transfer. But the act of delivery is a completed offense. And, Your Honor, the Third Circuit has held that in United States v. Dawson. The Third Circuit has considered this issue and held that under Pennsylvania law, attempted transfer is a completed delivery offense. The Third Circuit in Dawson noted that to hold otherwise would be inconsistent with Pennsylvania attempt law in two ways. First, criminal attempt is defined in Pennsylvania as the intent to commit a specific codified crime. Transfer is not a codified crime in Pennsylvania. So one must, so in order to, excuse me, transfer is not a codified crime. So you cannot attempt a transfer under criminal attempt law in Pennsylvania. Rather, transfer is simply the factual means of completing the crime of delivery. And the Dawson Court also noted the other inconsistency is in Pennsylvania mens rea law. Under general attempt law in Pennsylvania, one must have the specific intent. To interpret attempted transfer as an inchoate offense would be inconsistent with this mens rea case law because the specific intent would have to be the applicable mens rea. However, by the delivery statute itself, the applicable mens rea is mere knowingly. So it would be an inconsistency within the statute itself. And the Third Circuit refused to hold in that way. And finally, I just want to point out, as Judge Agee stated in his Miller opinion, to hold that Pennsylvania drug distribution statute is not a predicate offense for the career offender enhancement would be remarkable. And it would result in several other state drug trafficking laws not qualifying. And that cannot be what the Sentencing Commission intended. Your Honors, if you have no additional questions, we would ask that you affirm the judgment of the district court. Thank you very much. Thank you, Your Honors. A few points in reply. Johnson, we concede, would apply if Walker didn't exist. But because Walker exists, and it concluded that the offers to sell language as present in A1 is also fairly encompassed within A30, Johnson is just not on point to this situation. Second, Walker didn't parse out anything about whether the offer had to be bona fide or not. It's not. So nothing in the terms of Walker so limited it in that way. Even if New York has, or even if the Third Circuit has, Walker simply didn't do it. If any trial court could rely on Walker, which they do have the option presently, that's enough. Moving to attempted transfer, it's not relevant how attempted delivery is prosecuted, because as we said in the briefs and here today, the empirical data test has been discontinued. And so to the extent that some of these Third Circuit opinions rely on it, that also post-Taylor is incorrect as well. Ultimately, it doesn't matter whether there are two criminal statutes that criminalize an attempted drug offense, or whether there are three, because those aren't superfluous in any case for all of the reasons that we belabor in the opening brief. Surplusage does not exist just because there are two statutes that happen to cover the same crime. And the same is true if there were three. That's just a distinction without difference. So what do we do with Groves, Miller, and Davis, which seem to just disagree with your point there? They seem to say that it is, and I understand the logic of your argument, right? But what do I do with Groves, Miller, and Davis, who all seem to say that that superfluous argument prevails in this context? Actually, Groves, Miller, and Davis didn't address any of the cases that we've cited in these briefs. They've not been addressed at all in those opinions. I would also note that this Court, in those opinions, has made a practice of distinguishing Campbell on that basis. And so, you know, for a time— Distinguishing at all. What basis now? On the basis that there's just simply a general attempt statute and not a drug-specific attempt statute. So, you know, to the extent that it relied on that basis to reach those decisions in each of those subsequent cases in Groves, Miller, and Davis, you would have to then walk that back in order to differentiate this one here, which is like the West Virginia statute. The mens rea difference, speaking of superfluousness, the mens rea difference that my colleague brought up very handily supports a finding that the statutes aren't superfluous because it clearly points out a difference between them anyway, beyond what we've identified. But the difference in mens rea also helps explain very handily why these statutes simply aren't superfluous in any case. I'm happy to take any further questions that the Court may have with respect to any of these issues. Thank you very much, Ms. Thurman. We'd ask that the Court vacate the sentence and remand. Thank you, Your Honors. We thank both counsel for their able arguments. We'll come down and greet you and take a brief recess before moving on to our final two cases. This Honorable Court will take a brief recess.
judges: Albert Diaz, G. Steven Agee, Julius N. Richardson